07 CV 5970

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FRED DRASNER, | Civ. Action No. |
| Plaintiff, | JUN 2 2 2007 |
| v. | **COMPLAINT** |
| SH! ACOUSTICS LLC and STEVE HAAS, | TRIAL BY JURY DEMANDED |
| Defendants. | |

Fred Drasner ("Drasner"), by his attorneys Katten Muchin Rosenman LLP, as and for his complaint against SH! Acoustics LLC ("SH!") and Steve Haas ("Haas"), the President of SH!, hereby alleges as follows:

Nature of the Action

1. Drasner brings this action for breach of contract and fraud to recover for the substantial losses he has suffered arising out of the failed installation by SH! of its "Concertino" system, an in-home concert room that purportedly had a "state-of the art, world class concertino, live music recording and duplication system." SH! touts the Concertino system as the most sophisticated method of reproducing the acoustical properties of a concert hall or other venue in a home and represents that the system can be installed with little visible evidence of its existence. The system is extraordinarily expensive – the system for Drasner's home was to cost $274,121.00 – and, as Drasner learned after he purchased the system, requires major modifications to a building so that it can be installed.

2. To date, Drasner has paid $180,959.93 to SH! for the Concertino system, but the Concertino system SH! actually installed in Drasner's home does not work at all. Numerous key features that were supposed to be included in the system, such as the ability to record a performance, were never installed.

3. In addition to the technical problems, there were numerous costs and expenses associated with the installation of the system that, in order to induce Drasner to execute the contract, SH! and Haas failed to disclose to him. To date, Drasner has incurred more than $100,000 in such undisclosed expenses. Similarly, the Concertino system itself was not suitable for Drasner's home aesthetically, as it could not be installed unobtrusively, a fact that SH! and Haas concealed from Drasner in order to induce him to enter into the contract to purchase the system.

4. In this action, Drasner seeks to recover (i) the $180,959.93 he has paid for a defective system, (ii) the amounts necessary to repair his home for the damage caused by the installation and to reinstall a drywall ceiling and (iii) the substantial sums he expended to modify his home to accept installation of the system that he would not have expended but for the misrepresentations of Haas and SH!, plus punitive damages.

## The Parties

5. Plaintiff Drasner is an individual and is a citizen of the State of Florida.

6. Defendant SH! is a limited liability company organized under the laws of the State of Connecticut, with its principal place of business located at 10 Higgins Drive, Milford, Connecticut.

7.  Defendant Haas is an individual and, upon information and belief, is a citizen of the State of Connecticut.

## Jurisdiction and Venue

8.  This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that there is complete diversity between Plaintiff Drasner and Defendants SH! and Haas (collectively "Defendants") on each of the claims asserted by Drasner against Defendants. The amount of Drasner's claims against each of the Defendants exceeds $75,000.

9.  Venue is proper in this district under 28 U.S.C. §§ 1391(a)(2).

## Factual Background

### SH! and Haas Induce Drasner to Purchase a Concertino System

10. Drasner first met Haas in or about April 2005 in the SH! showroom in New York, New York. At that initial meeting, Haas demonstrated the Concertino system that had been set up in the showroom using a live musician. The demonstration was very impressive. The model Concertino system in the showroom did an excellent job of recreating a concert hall and several other venues (depending on the settings entered into the electronic system). In addition, the Concertino system in the showroom was unobtrusive and fit in with the design of the showroom.

11. Haas and Drasner had several additional meeting to discuss the possibility of installing a Concertino system in Drasner's apartment in Florida. In connection with those discussions, Haas traveled to Florida to inspect Drasner's apartment and to evaluate whether the Concertino system could be installed in it.

12. After inspecting Drasner's apartment, Haas assured Drasner that the Concertino system would be able to be installed unobtrusively in his apartment in Miami, Florida and that,

once installed, it would perform in the same manner as the system installed in the New York showroom of SH!.

13. Haas did not disclose during the April 2005 demonstration (or at any time before the contract between the parties was entered into) that substantial and very expensive modifications would have to be made to the ceiling in Drasner's apartment in order for the Concertino system to be installed. Not only did SH! and Haas conceal the fact that very expensive modifications would be needed, they also concealed the fact that the standard drywall ceiling in Drasner's apartment was not compatible with the Concertino system and that, in its place, a fabric ceiling – which is aesthetically displeasing, would need to be installed.

14. Based upon Haas' representations concerning the suitability of Drasner's apartment for the Concertino system, Drasner decided to proceed to the next step with respect to the purchase and installation of the Concertino system and agreed to have Haas put together a detailed proposal with respect to such an installation.

15. On or about August 22, 2005, SH! and Haas forwarded a proposed contract to Drasner that provided that the price for the complete installation of the Concertino system in Drasner's home would be $274,121.00 (subject to certain deductions if labor costs were not as high as estimated). SH! and Haas represented that the $274,121 set forth in the proposed contract would be the maximum amount that the installation would cost, concealing the fact that substantial modifications to Drasner's apartment, costing in excess of $100,000 would be needed.

16. Based upon the representations of Haas and SH! that the Concertino system could be installed in his apartment for a total price of no more than $274,121.00, Drasner executed the proposed contract (the "Agreement") on, or prior to, August 29, 2005.

17. At the time the Agreement was signed in August 2005, and in accordance with Section 4 of the Agreement, Drasner paid SH! $90,459.93 so that work could commence. Pursuant to Section 4, an additional payment of $90,459.93 on or about August 29, 2005 was due upon delivery of the equipment to Drasner and the final two payments were due after the installation had been accepted by Drasner and the Punch List of outstanding items was resolved.

18. Pursuant to Sections 3.2 of the Agreement, the work to be performed by SH! would not be considered to be accepted by Drasner until a "third-party industry professional" verifies "that all Work has been performed and hardware components and other material is installed and functional in accordance with specifications in the Agreement, and industry standards for new and state-of-the-art, world class concertino, live music recording and duplication systems, and (ii) determination of a Punch List acceptable to [Drasner and SH!]."

SH! Installs a System That Does Not Work

19. After Drasner made the initial $90,459.93 payment, SH! commenced work on the installation of the Concertino system in Drasner's home.

20. Pursuant to the Agreement, a second payment of $90,459.93 was to be paid to SH! within seven days after all equipment was delivered to Drasner's residence. Drasner duly made a payment of $90,500.00 on or about May 17, 2006.

21. Before SH! could install the equipment, however, substantial modifications had to be made to Drasner's apartment. The drywall ceiling had to be replaced with a fabric ceiling. The fabric ceiling, and the other modifications necessary for the installation cost Drasner over $100,000.00.

22. Although very expensive, the fabric ceiling is not aesthetically pleasing because it has visible seams in the ceiling and gives the appearance that it is dirty even when new. Moreover, the fabric ceiling cannot be cleaned easily and it made installation of the electrical wiring for the Concertino system very difficult. In addition, in the event that any of the acoustical equipment in the ceiling needs to be replaced, the entire ceiling will need to be removed and replaced.

23. After the modifications to Drasner's apartment were made, SH! proceeded to install the equipment for the Concertino system. In August 2006, the purportedly complete system was demonstrated for Drasner. That demonstration revealed that the installation of the Concertino system was not complete. In particular, the recording system was not installed and numerous other key components were not installed properly. In fact, at present, the system cannot be turned on at all without deafening feedback resulting. Nor have the controls for the system been programmed.

24. Since the installation was never completed and the system is not in working order, Drasner has not accepted it and, as a result, the third and fourth payments by Drasner, under Section 4 of the Agreement, are not due.

25. Despite repeated requests, Haas and SH! have refused to complete the installation of the system in a manner acceptable to Drasner in accordance with the requirements for "Acceptance by Client" set forth in Section 3.2 of the Contract.

Haas Takes Undisclosed Profits on Sales to Drasner's Contractor

26. The general contractor working on Drasner's apartment agreed to charge Drasner cost, plus 6%, for all materials he purchased to install in Drasner's apartment.

6

27. Haas was aware of the arrangement Drasner had with his contractor referred to in paragraph 26 above.

28. With knowledge of the agreement referred to in paragraph 26 above, Haas supplied materials to Drasner's contractor and secretly marked up the price of those materials before doing so. Haas knew that the materials could have been obtained by the general contractor from other sources, but, in order to increase his and SH!'s profits, offered to, and did, provide the materials to Drasner's general contractor without disclosing that he was taking a profit when doing so.

## COUNT I
(Breach of Contract against SH! Acoustics)

29. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 - 28 above as if fully set forth herein.

30. Drasner has fully performed all obligations required to be performed by him under the Agreement.

31. SH! has failed to perform its obligation to complete the installation of the Concertino system in accordance with the terms of the Agreement. In particular, SH! failed to install all components of the Concertino system and to ensure that the system works at all, let alone as a "state-of-the-art, world-class concertino, live music recording and duplication system" should.

32. As a result of the foregoing, SH! breached its obligation to complete the installation in a manner that satisfies the requirements of Section 3.2 of the Agreement for "Acceptance by Client" and Drasner been damaged in an amount to be determined at trial, but not less than

$180,959.93, plus the costs of repairing the damage caused by the installation and of reinstalling a drywall ceiling.

## COUNT II
### (Fraud against all Defendants)

33. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 - 28 and 30 - 32 above as if fully set forth herein.

34. In their representations concerning the cost of the installation of the Concertino system to Drasner prior to the time he executed the Agreement, Haas and SH! fraudulently concealed the fact that Drasner would need to make substantial modifications to his apartment that would significantly increase the cost of the installation in order for the system to be installed. Similarly, Haas and SH! fraudulently concealed from Drasner the fact that the modifications to his apartment that were necessary for the installation of the Concertino system would significantly detract from the appearance of the apartment. At the time they made the representations concerning the cost of the installation of the system, and fraudulently concealed the cost and aesthetic impact of the modifications, Haas and SH! knew that the actual cost and aesthetic impact of the necessary modifications were significant. Haas and SH! also knew that if they revealed the modifications that would be necessary for the installation of the Concertino system, Drasner would not enter into the Agreement to purchase the system and have it installed.

35. In addition, Haas and SH! fraudulently misrepresented to Drasner that the Concertino system to be installed in Drasner's apartment would perform substantially the same as the system in SH!'s New York showroom. At the time they made the representations to Drasner concerning the ability to recreate the showroom's system in his apartment, Haas and SH! knew that it was not possible to do so. Haas and SH! also knew that Drasner would not

purchase the Concertino system for his apartment if it could not perform in substantially the same manner as the system in SH!'s New York showroom.

36. Haas and SH! also fraudulently concealed that they were marking up, and taking a profit on, materials they supplied to Drasner's general contractor for which Drasner was supposed to be charged cost, plus 6%. Drasner would not have paid the increased price for these material if he know about the mark-up Haas and SH! were taking and, in fact, once he learned of the practice, Haas and SH! ceased taking such a profit.

37. Drasner reasonably relied upon the fraudulent statements and concealments made by Haas and SH! in deciding to enter into the contract with SH!. If Haas and SH! had not fraudulently misrepresented (i) the costs of the modifications necessary to prepare Drasner's apartment for the installation of the Concertino system, (ii) the impact of the modifications necessary for the installation of the system on the aesthetics of the apartment, and (iii) SH!'s ability to recreate the performance of the system in the New York showroom, Drasner would not have agreed to purchase the system.

38. As a result of his reliance on the misrepresentations of Haas and SH!, Drasner was forced to spend over $100,000 in modifying his apartment to accept the installation of the Concertino system and to pay an amount to be determined at trial in excessive mark-ups to Haas and SH! from materials Defendants supplied to Drasner's general contractor. In addition, the modifications that Drasner was forced to make left his apartment less aesthetically pleasing.

39. As a result of the foregoing, Drasner has been damaged in an amount to be determined at trial, but not less than $100,000, plus punitive damages.

WHEREFORE, Plaintiff Fred Drasner prays for relief as follows:

(i) on Count I, awarding plaintiff damages against SH! Acoustics LLC in an amount to be determined at trial, but believed to be in excess of $180,959.93, plus the costs of repairing Drasner's apartment and of reinstalling a drywall ceiling, plus interest, as well as issuing a declaratory judgment that Drasner has no further obligations under the Agreement; and

(ii) on Count II, awarding plaintiff compensatory and punitive damages against SH! Acoustics LLC and Steve Haas, jointly and severally, in an amount to be determined at trial, but not less than $100,000.000, plus interest;

(iii) awarding plaintiff attorneys fees, costs and such other and further relief as this Court deems just and proper.

Dated: New York, New York
June 22, 2007

KATTEN MUCHIN ROSENMAN LLP

_____
Robert W. Gottlieb (RWG-4147)
Steven Shiffman (SS-3630)
575 Madison Avenue
New York, New York 10036
(212) 940-8800

*Attorneys for Plaintiff Fred Drasner*